Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail:  jpafiti@pomlaw.com

Jeremy A. Lieberman
Matthew L. Tuccillo
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email: jalieberman@pomlaw.com
       mltuccillo@pomlaw.com
       ahood@pomlaw.com
       mgorrie@pomlaw.com
(*additional counsel on signature page*)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONACHELLI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HORTONWORKS, INC., ROBERT G. BEARDEN, and SCOTT J. DAVIDSON,<br><br>Defendants | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

{00194237;3 }

## INTRODUCTION

1. Plaintiff William Monachelli ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Hortonworks, Inc. ("Hortonworks" or the "Company"), the Company's stock chart, conference call transcripts regarding the Company, and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

2. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants and their family members, directors and officers of Hortonworks and their families and affiliates, who purchased or otherwise acquired the common stock of Hortonworks between November 4, 2015 and January 15, 2016 (the "Class Period"), both dates inclusive, seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

## BACKGROUND

3. Hortonworks focuses on the development, distribution, and support of the Hadoop open source project in the United States and internationally. The Company offers Hortonworks Data Platform, an enterprise-grade data management platform that purportedly enables its customers to capture, store, process, and analyze increasing amounts of existing and new data types without the need to replace their existing data center infrastructure. The Company also provides Hortonworks Sandbox, a personal, portable, and free to use Hadoop environment purportedly designed to offer the easiest way to get started with Enterprise Grade Hadoop and the Hortonworks Data Platform. In addition,

Hortonworks provides support subscription, and training and consulting services – from which it derives substantially all of its revenues.

4. The Company was founded in 2011 and is headquartered in Santa Clara, California. Hortonworks is one of three major Hadoop vendors and the only one that is publicly-traded. Its stock trades on the NASDAQ under the ticker symbol "HDP."

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, cash position, prospects, and internal controls. Specifically, in November 2015, Defendants: (i) misrepresented that Hortonworks had sufficient cash and cash equivalents to fund 12 months of working capital and capital expenditure needs; (ii) failed to disclose that Hortonworks in actuality lacked adequate cash to meet those working capital and capital expenditure requirements over that period of time; (iii) failed to disclose that, as a result, Defendants were contemplating a significant offering to fund its operations; and (iv) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

6. On Friday, January 15, 2016, post-market, Hortonworks announced it had retained Goldman Sachs to raise $100 million in a secondary offering. Analysts expressed surprise, with one stating, "We believe it will be incumbent on HDP during its roadshow to show why this offering, announced in this way, at this time, should not be interpreted as evidence of serious difficulty."

7. On this news, Hortonworks's stock fell $6.13, or nearly 37%, to close at $10.44 on January 19, 2016, the next trading day.

8. As a result of Defendants' false and/or misleading statements, Hortonworks securities traded at inflated prices during the Class Period. After corrective disclosure of Defendants' false and/or misleading statements, Hortonworks's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

**JURISDICTION AND VENUE**

9. Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because Hortonworks is headquartered in this district and many of the acts and practices complained of herein occurred in substantial part in this district.

**PARTIES**

11. Plaintiff purchased or otherwise acquired Hortonworks common stock as described in the attached certification and was damaged by the conduct alleged herein.

12. Defendant Hortonworks is incorporated in Delaware and trades on the NASDAQ under the ticker symbol "HDP." The Company's corporate headquarters are located at 5470 Great America Parkway, Santa Clara, California 95054.

13. Defendant Robert G. Bearden ("Bearden") has served at all relevant times as Chief Executive Officer and Chairman of Hortonworks.

14. Defendant Scott J. Davidson ("Davidson") has served at all relevant times as Chief Financial Officer of Hortonworks.

15. The Defendants named in ¶¶ 13-14 are sometimes referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**<u>Background</u>**

16. Hortonworks focuses on the development, distribution, and support of the Hadoop open source project in the United States and internationally. The Company offers Hortonworks Data Platform, an enterprise-grade data management platform that purportedly enables its customers to

{00194237;3 } 4

capture, store, process, and analyze increasing amounts of existing and new data types without the need to replace their existing data center infrastructure. The Company also provides Hortonworks Sandbox, a personal, portable, and free to use Hadoop environment purportedly designed to offer the easiest way to get started with Enterprise Grade Hadoop and the Hortonworks Data Platform. In addition, Hortonworks provides support subscription, and training and consulting services – from which it derives substantially all of its revenues.

17. The Company was founded in 2011 and is headquartered in Santa Clara, California. Hortonworks is one of three major Hadoop vendors and the only one that is publicly-traded. Its stock trades on the NASDAQ under the ticker symbol "HDP."

**False and Misleading Statements were Issued During the Class Period**

18. The Class Period begins on November 4, 2015, when Hortonworks issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 8-K"). For the quarter, Hortonworks reported a net loss of $44.5 million, or $1.01 per diluted share, on revenue of $33.1 million, compared to a net loss of $39.5 million, or $8.98 per diluted share for the same period in the prior year. Hortonworks additionally reported that as of September 30, 2015, the Company had cash and investments of $116.3 million.

19. On November 12, 2015, Hortonworks filed a Form 10-Q with the SEC, which was signed by Defendant Davidson, reiterating the financial and operating results previously announced in the Company's Q3 2015 8-K (the "Q3 2015 10-Q"). The Q3 2015 10-Q also stated, in part:

> To date, we have financed our operations primarily through private placements of preferred stock, our initial public offering and the concurrent private placement of our common stock, and cash flow from operations. ***We believe that our existing cash and cash equivalents balance, together with cash generated from sales of our support subscriptions and professional services to customers, will be sufficient to meet our working capital and capital expenditure requirements for the next 12 months***.

(Emphasis added.)

20. The Q3 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating, among other things, that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21. The statements referenced in ¶¶ 18-20 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, cash position, prospects, and internal controls. Specifically, in November 2015, Defendants: (i) misrepresented that Hortonworks had sufficient cash and cash equivalents to fund 12 months of working capital and capital expenditure needs; (ii) failed to disclose that Hortonworks in actuality lacked adequate cash to meet those working capital and capital expenditure requirements over that period of time; (iii) failed to disclose that, as a result, Defendants were contemplating a significant offering to fund its operations; and (iv) as a result of the foregoing, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins To Emerge**

22. On Friday, January 15, 2016, post-market, Hortonworks announced it had retained Goldman Sachs to raise $100 million in a secondary offering. Analysts expressed surprise, with one stating, "We believe it will be incumbent on HDP during its roadshow to show why this offering, announced in this way, at this time, should not be interpreted as evidence of serious difficulty."

23. On this news, Hortonworks's stock fell $6.13, or nearly 37%, to close at $10.44 on January 19, 2016, the next trading day.

24. As a result of Defendants' false and/or misleading statements, Hortonworks securities traded at inflated prices during the Class Period. However, after corrective disclosure of Defendants'

false and/or misleading statements, Hortonworks's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class, as defined above.

26. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Hortonworks has more than 100 million shares of stock outstanding, owned by hundreds or thousands of persons.

27. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a) Whether the 1934 Act was violated by defendants;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of Hortonworks common stock was artificially inflated during the Class Period; and

(f) The extent of damage sustained by Class members as a result of Defendants' conduct and the appropriate measure of damages.

28. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from the same wrongful conduct by Defendants as outlined herein.

{00194237;3 }  7

29. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## NO SAFE HARBOR

31. Defendants are not entitled to "safe harbor" protection under the federal securities laws.

32. Defendants' statements were not forward-looking, were not accompanied by risk warnings, and/or were accompanied by deficient warnings insufficient to give rise to "safe harbor" protection.

33. When Defendants spoke, they knew or were reckless in not knowing that their statements were false or misleading when made.

## FRAUD ON THE MARKET PRESUMPTION

34. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

    (a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    (b) The omissions and misrepresentations were material;

    (c) The Company's stock traded in an efficient market;

    (d) The Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

    (e) The Company's shares traded on the NASDAQ, and it was covered by multiple analysts;

(f) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(g) Plaintiff and other members of the Class purchased Hortonworks common stock between the time Defendants misrepresented and/or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

35. At all relevant times, the market for Hortonworks's common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, Hortonworks filed periodic public reports with the SEC; and

(b) Hortonworks regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

**COUNT I**
**(Against All Defendants For Violations of**
**Section 10(b) and Rule 10b-5 Promulgated Thereunder)**

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase

{00194237;3 } 9

and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hortonworks securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Hortonworks securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Hortonworks securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Hortonworks's business, operations, cash position, prospects, and internal controls.

40. By virtue of their positions at Hortonworks, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

41. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors

of Hortonworks, the Individual Defendants had knowledge of the details of Hortonworks's internal affairs, business, operations, cash position, prospects, and internal controls.

42.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Hortonworks.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Hortonworks's business, operations, cash position, prospects, and internal controls.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Hortonworks securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Hortonworks's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Hortonworks securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

43.     During the Class Period, Hortonworks securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Hortonworks securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Hortonworks securities was substantially lower than the prices paid by Plaintiff and the other members

of the Class. The market price of Hortonworks securities declined sharply upon corrective disclosure of the fraud alleged herein, to the injury of Plaintiff and Class members.

44. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

45. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the corrective disclosure that the Defendants had been disseminating misinformation to the investing public.

**COUNT II**
**(Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants)**

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. During the Class Period, the Individual Defendants participated in the operation and management of Hortonworks, and conducted and participated, directly and indirectly, in the conduct of Hortonworks's business affairs. Because of their senior positions, they knew the adverse non-public information about Hortonworks's business, operations, cash position, prospects, and internal controls.

48. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Hortonworks's business, operations, cash position, prospects, and internal controls, and to correct promptly any public statements issued by Hortonworks which had become materially false or misleading.

49. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, SEC filings, and other public statements which Hortonworks disseminated in the marketplace during the Class Period concerning Hortonworks's business, operations, cash position, prospects, and internal controls.

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hortonworks to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Hortonworks within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hortonworks securities.

50. Each of the Individual Defendants, therefore, acted as a controlling person of Hortonworks.  By reason of their senior management positions and/or being directors of Hortonworks, as well as their roles in signing and/or SOX certifying the Company's SEC filings at issue, each of the Individual Defendants had the power to direct the actions of Hortonworks and exercised the same to cause Hortonworks to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Hortonworks and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Hortonworks.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding Plaintiff and the members of the Class damages and interest;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: February 29, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/Jennifer Pafiti*_____
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Matthew L. Tuccillo
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484

Facsimile (212) 697-7296
Email: peretz@bgandg.com

*Attorneys for Plaintiff*