Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210 Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

Jeremy A. Lieberman
Matthew L. Tuccillo
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       mltuccillo@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM MONACHELLI and RANDALL A. ARVIDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>HORTONWORKS, INC., ROBERT G. BEARDEN, and SCOTT J. DAVIDSON,<br><br>          Defendants. | Case No. 3:16-cv-00980-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   September 22, 2017<br>Time:  10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br>Judge: Hon. Susan Illston |

**PLEASE TAKE NOTICE** that, pursuant to the Court's Order Granting Preliminary Approval of Settlement (Dkt. No. 66) issued on June 12, 2017 ("Preliminary Approval Order"), on September 22, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard, at the United States Court, Northern District of California, Courtroom 1, 17th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA, 94102, before the Honorable Susan Illston, Lead Plaintiff Randall A. Arvidson ("Arvidson" or "Lead Plaintiff") and Plaintiff William Monachelli ("Monachelli") (together "Plaintiffs") will, and hereby do move for an order: (1) granting final approval of the proposed class action settlement (the "Settlement") in the above-captioned action (the "Action"), and (2) dismissing the Claims with prejudice.

The Settlement provides a total Settlement Amount of one million one hundred thousand dollars ($1,100,000.00) as documented within the Stipulation and Agreement of Settlement dated March 27, 2017, as revised and re-submitted May 26, 2017 (Dkt. No. 65) (together with its exhibits the "Stipulation").[1] This Motion is supported by the following materials, including those submitted herewith: the accompanying Memorandum of Points and Authorities; the Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl."); the Declaration of Lead Plaintiff Arvidson ("Arvidson Decl."); the Declaration of Plaintiff Monachelli ("Monachelli Decl."); the Declaration of Sarah Evans Concerning the Mailing of Notice, Publication of Summary Notice, Exclusion Requests Received and Objections Submitted ("Evans Decl."); Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards for Plaintiffs and Memorandum of Points and Authorities in Support thereof (the "Fee & Expense Motion"); the Stipulation and all other pleadings and papers filed in this action; and arguments of Lead Counsel at the upcoming final approval hearing.

To date, despite the mailing of over **8,285 notices**, *no objections* to the Settlement have been filed and *only one Class Member sought to be excluded* from the Settlement. *See* Evans

---

[1]     All capitalized terms, unless otherwise defined herein, have the same meaning herein as set forth in the Stipulation.

Decl. ¶¶5, 10-11.  The deadline for filing any such objection is September 1, 2017.  To the extent any such objections are filed, Lead Counsel Pomerantz LLP ("Pomerantz" or "Lead Counsel") will respond to each such filing by September 8, 2017.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e).

2.      Whether the Plan of Allocation is fair, reasonable, and adequate.

3.      Whether the Court should certify the Settlement Class[2] and whether the Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

4.      Whether the Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate.

5.      Whether the Court should permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action as to the Defendants.

6.      Whether the application for an award of attorneys' fees and reimbursement of out-of-pocket expenses submitted by Lead Counsel should be approved.

7.      Whether the application for a compensatory award submitted by Plaintiffs should be approved.

---

[2]      The Settlement Class means all Persons, save for those expressly exempted as set forth in the Stipulation, who purchased or otherwise acquired Hortonworks securities during the Class Period of August 5, 2015 through January 15, 2016, dates inclusive.

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND
PLAN OF ALLOCATION - Case No. 3:16-cv-00980-SI

# TABLE OF CONTENTS

I.      INTRODUCTION AND BACKGROUND ....................................................... 1

II.     THE LITIGATION AND SETTLEMENT ..................................................... 2

III.    PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE ........................... 4

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................... 5

        A.    The Standards For Judicial Approval Of Class Action Settlements ................... 5

        B.    A Review Of The *Hanlon* Factors Demonstrates That The Settlement Is Fair,
              Reasonable, And Adequate, And Supports Final Approval ............................... 7

              1.    The Overall Strength Of Plaintiffs' Case, Including The Risk, Expense,
                    Complexity, And Likely Duration of Further Litigation ......................... 7

                    a.    PSLRA Cases Have Significant Obstacles To Success ............... 8

                          i.    The Risk Of Establishing Falsity And Scienter ................... 8

                          ii.   The Risk Of Proving Transaction And Loss Causation And
                                Damages ............................................................... 8

                    b.    Continued Litigation Would Be Risky And Expensive ............... 9

              2.    The Risks Of Achieving Class Action Status And Maintaining That
                    Status Throughout Trial .......................................................... 10

              3.    The Amount Obtained In The Settlement ........................................ 11

              4.    The Extent Of Discovery Completed And Stage Of The Proceedings ... 12

              5.    Experienced Counsel Negotiated The Settlement In Good Faith And
                    At Arm's-Length And Believe It Is Fair, Reasonable, and Adequate .... 14

              6.    The Absence Of A Governmental Participant ................................... 15

              7.    The Overwhelmingly Positive Reaction Of The Settlement Class ......... 15

              8.    The Absence Of Collusion Among The Negotiating Parties ................. 16

V.      NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ................. 16

VI.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ........ 17

VII.    SETTLEMENT CLASS CERTIFICATION REMAINS WARRANTED .................... 19

        A.    The Settlement Class Satisfies The Requirements of Rule 23(a) ...................... 19

        B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ................... 22

VIII.   CONCLUSION ............................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Alfus v. Pyramid Tech. Corp.*,
    764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................ 20

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................... 20

*Athale v. Sinotech Energy Ltd.*, No. 11- CV-05831,
    2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) ....................................................... 13

*Browne v. Am. Honda Motor Co.*, No. 09-cv-06750-MMM,
    2010 WL 9499072 (C.D. Cal. July 29, 2010) ........................................................ 10

*Danis v. USN Commc'ns, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999) ............................................................................. 20

*Elliott v. Rolling Frito-Lay Sales, LP*, No. 11-cv-01730-DOC,
    2014 U.S. Dist. LEXIS 83796 (C.D. Cal. June 12, 2014) ..................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804, 131 S. Ct. 2179 (2011) .................................................................... 22

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ................................................................................................. 5

*Gittin v. KCI USA, Inc.*, No. 09-cv-05843 RS,
    2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ....................................................... 23

*Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068-MMC,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .......................................................... 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................... 5, 6, 7, 11, 21

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................. 21

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................... 22

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................... 21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ................................................................... 9

*In re Amgen Sec. Litig.*, No. 07-cv-2536-PSG,
  2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) ....................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................. 6, 16

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) ..................................................... 21, 22

*In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551 WHA,
  2002 WL 32627559 (N.D. Cal. June 18, 2002) ..................................... 13

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ............................................. 20, 21, 22

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................ 7, 9, 14, 19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................. 17

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ........................................................ 22

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ......................................................... 22

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ..................................................... 6, 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................. 6, 11, 12, 13

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ............................................................... 15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................... 11, 14, 15, 18, 19

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................. 14

*In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138-VRW,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..................................... 17

*In re Rambus Inc. Derivative Litig.*, No. 06-cv-3513 JF (HRL),
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ........................................ 15

*In re Sumitomo Cooper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................ 7

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..................................................... 5, 10

*In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA,
2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ................................. 13

*In re UTStarcom Sec. Litig.*, No. 04-cv-04908 JW,
2010 WL 1945737 (N.D. Cal. May 12, 2010) ....................... 19, 20, 22

*In re VeriSign, Inc. Sec. Litig.*, No. 02-cv-02270-JW,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ............................ 20, 21

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008) ........................................................ 17

*Jenson v. Fiserv Trust Co.*,
256 F. App'x 924 (9th Cir. 2007) ..................................................... 11

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ............................................................. 5

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........................................................... 21

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ......................................................... 13

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) ..................................................... 22

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................... 10, 15

*Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .................................... 19

*Nobles v. MBNA Corp.*, No. 06-cv-3723-CRB,
2009 WL 1854965 (N.D. Cal. June 29, 2009) .................................. 9

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .................................................... 5, 6, 11

*Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC,
    2010 WL 4366012 (D. Nev. Oct. 28, 2010) ...................................................... 18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................... 6, 7

*Van Wingerden v. Cadiz, Inc.*, No. 15-cv-03080-JAK,
    2017 U.S. Dist. LEXIS 18800 (C.D. Cal. Feb. 8, 2017) ...................................... 18

*Vathana v. EverBank*, No. 09-cv-02338 RS,
    2010 WL 934219 (N.D. Cal. Mar. 15, 2010) .................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................................. 11

*West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ................................................... 20

*Yamner v. Boich*, No. C-92-20597 RPA,
    1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ................................................... 19

*Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05-cv-2057-L(JMA),
    2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ................................................... 22

## <u>Statutes</u>

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 ................................. 8, 17

Securities Exchange Act of 1934 Section 10(b) ......................................................... 8

## <u>Rules</u>

Fed. R. Civ. P. 23 ........................................................ 5, 11, 16, 17, 19, 20, 21, 22, 23

## I.      INTRODUCTION AND BACKGROUND

Plaintiffs and Lead Counsel have successfully achieved a Settlement of this difficult securities class action for a total recovery of one million one hundred thousand dollars ($1,100,000.00) in cash to resolve the claims that were alleged in this Action as to Settling Defendants Hortonworks Inc. ("Hortonworks"), Robert G. Bearden ("Bearden"), and Scott J. Davidson ("Davidson").

The Settlement is the product of extensive work by Lead Counsel, which included not only the investigation of claims, preparation of initial and amended complaints, and litigation of a motion to dismiss, but also, following this Court's order of dismissal without prejudice, Lead Counsel's simultaneous investigation of facts for a second amended complaint and intensive settlement negotiations with Settling Defendants' counsel during late December 2016 and early January 2017.   As detailed below, the Settlement is a favorable result for Settlement Class members, given the immediate financial recovery, on the one hand, and the substantial risk that any further amended complaint might also be dismissed, on the other hand.

Having evaluated the facts and applicable law, and recognizing the risks and expense of continued litigation, Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is in the best interests of the Settlement Class.  Before entering into the Settlement, Plaintiffs and Lead Counsel understood the strengths and weaknesses of the claims and defenses and engaged in significant efforts to protect the interests of the Settlement Class, including:

- Lead Counsel directed their private investigator to pursue additional investigative work, with a focus on the Court's concerns articulated in the Dismissal Order.

- Lead Counsel engaged in telephonic and electronic discussions and negotiations with Settling Defendants' counsel during late December 2016 and early January 2017 that culminated in an oral agreement-in-principle to settle as of December 29, 2016, and, after exchanges of drafts and redlines, a Memorandum of Understanding was executed on January 5, 2017.

- Lead Counsel and Settling Defendants Counsel engaged in extensive negotiations – including frequent telephonic and written correspondence, the exchange of extensive and detailed redline versions – to reach the original Stipulation and Agreement of Settlement, along with its accompanying exhibits, executed on March 27, 2017.

- Lead Counsel and Settling Defendants' Counsel engaged in additional negotiations to address the Court's concerns articulated at the preliminary approval hearing, resulting in the revised Stipulation and exhibits, re-filed on May 26, 2017 (the "Stipulation").

Tuccillo Decl. ¶¶10-16, 18, 20-21.

The Settlement Class is defined as "[a]ll Persons who purchased or otherwise acquired Hortonworks securities during the period of August 5, 2015 through January 15, 2016, both dates inclusive." *See* Stipulation at §IV, ¶1 (bb); Preliminary Approval Order at 4. Excluded are "the Settling Defendants and their immediate family members; any officer or director of Hortonworks during the Class Period; any entity in which any Settling Defendant has, or had during the Class Period, a controlling interest; and the heirs, successors-in-interest, or assigns of any excluded person." *Id.*

## II.       THE LITIGATION AND SETTLEMENT

On February 29, 2016, Plaintiff Monachelli filed a class action complaint for violation of the federal securities laws against the Settling Defendants (Dkt. No. 1). By Order dated June 1, 2016, the Court appointed Arvidson as Lead Plaintiff for the Action and approved Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel (Dkt. No. 39). Tuccillo Decl. ¶¶5-6.

On July 28, 2016, Plaintiffs filed their First Consolidated Amended Complaint ("FAC") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Bearden and Davidson under Section 20(a) of the Exchange Act (Dkt. No. 42). The FAC alleged, *inter alia*, that Defendants unlawfully inflated Hortonworks' stock price by misleading investors about the sufficiency of Hortonworks' cash position and its intent to and need to raise capital through a dilutive equity offering. The FAC further alleged that the misleading nature of Defendants' statements remained hidden until January 15, 2016, when Hortonworks announced plans for a follow-on public offering of up to $100 million, causing its stock to fall $6.13 per share, nearly 37%, on exceptionally high volume. The FAC alleged that Defendants' conduct at

issue had inflated Hortonworks' stock price and that, when the truth was revealed and the stock price fell as a result, investors suffered injury.  Tuccillo Decl. ¶¶4, 7.

On September 12, 2016, Defendants filed a motion to dismiss the FAC, supported by a memorandum of law, declaration, and materials for which they sought judicial notice (Dkt. Nos. 43-45).  Plaintiffs opposed said motion and request for judicial notice on October 27, 2016 (Dkt. Nos. 46-47).  Defendants filed their reply, along with an additional declaration and supplemental request for judicial notice on November 17, 2016 (Dkt. Nos. 48-51).  Tuccillo Decl. ¶8.

On December 5, 2016, the Court entered an Order (Dkt. No. 52) (the "Dismissal Order") granting Defendants' motion to dismiss, without a hearing, while affording Plaintiffs leave to amend on or before January 6, 2017.  Tuccillo Decl. ¶9.

After the Court's Dismissal Order, Lead Counsel instructed their private investigator to pursue more statements from former Hortonworks employees, to address the concerns articulated in the Dismissal Order.  These efforts resulted in interviews of four additional witnesses, including former Hortonworks employees who worked in its revenue and accounting functions.  Lead Counsel considered filing a further amended complaint, and would have included additional confidential witness allegations aimed at addressing the Court's concerns, but were concerned they might not be sufficient to survive a second motion to dismiss.  *Id*. ¶¶10-12.

Toward the end of the amendment period, Lead Counsel initiated settlement negotiations with Settling Defendants' counsel.  These were arms'-length negotiations, over numerous emails and teleconferences, during which each side pressed for the most advantageous outcome, while remaining in touch with their respective clients, culminating in an oral agreement to settle the Action as of December 29, 2016, and, after exchanges of drafts and redlines, an MOU was executed on January 5, 2017.  *Id*. ¶¶13-14.

Per the parties' stipulation, which they filed on January 5, 2017 (Dkt. No. 53) and which the Court so ordered, the deadline for Lead Plaintiff to file a further amended complaint was stayed pending the outcome of the settlement approval process.  *Id*. ¶15.

The parties then engaged in intensive and extensive negotiations over the Stipulation of Settlement.   For months, Lead Counsel and counsel for Defendants engaged in frequent telephonic and written correspondence, including exchanging extensive and detailed redlines of documents, to finalize the Stipulation and all its accompanying Exhibits.  *Id*. ¶16.  The Stipulation was finalized and executed on March 27, 2017 and filed on April 11, 2017 (Dkt. No. 59-1). Tuccillo Decl. ¶¶16-17.  After the preliminary approval hearing, the parties engaged in further negotiations over revisions to the Stipulation and its exhibits to address the Court's concerns, culminating in the filing of a revised Stipulation (Dkt. No. 65) on May 26, 2017.  *Id.* ¶18.

While Plaintiffs and Lead Counsel believe the Settlement Class has valid claims against Settling Defendants, they faced significant risks in successfully pleading and ultimately proving all elements of their claims.  The Settling Defendants denied any liability or damages and would have had numerous opportunities to convince the Court, or a jury.  No doubt, they would have raised such challenges at every opportunity, including a second motion to dismiss, in a motion for summary judgment, and at trial, making successful prosecution and recovery uncertain.

The Settlement eliminates these risks and provides the Settlement Class with a certain total recovery of $1,100,000.00 in cash.  In light of the obstacles to recovery and the substantial time and expense that continued litigation would require, Plaintiffs and Lead Counsel believe the Settlement is a good result for the Settlement Class, and provides a fair and reasonable resolution of the claims against the Settling Defendants.

**III.      PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE**

On April 28, 2017, the Court held a hearing on Plaintiffs' motion for preliminary approval. At the hearing, the Court raised certain concerns, prompting the parties to revise the Stipulation and its exhibits and resubmit them for approval.  On June 12, 2017, the Court issued its Preliminary Approval Order, which preliminarily approved the Settlement, certified the Settlement Class for purposes of the Settlement, and directed that notice be distributed to Settlement Class Members.  Tuccillo Decl. ¶¶18-19.

As required by the Court's Preliminary Approval Order, copies of the short-form Notice were sent to over **8,285** potential Settlement Class members and their nominees.  *See* Evans Decl. ¶¶5-6.  The Notice directed Settlement Class members to the Claims Administrator's website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation were posted, along with the deadlines approved by the Court.  *Id*. ¶¶4.  In addition, the Court-approved Summary Notice was published over the GlobeNewswire on July 3, 2017.  *Id*. ¶8.  To date, after this notice program, there have been **<u>zero</u> objections** to any aspect of the Settlement, and **<u>only one</u> request for exclusion** from a potential Settlement Class member, while Settlement Class members have thus far filed **<u>1,722</u> claims**.  *Id*. ¶¶10-12.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards For Judicial Approval Of Class Action Settlements

In deciding whether to approve a proposed settlement pursuant to Fed. R. of Civ. P. 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008).[3]  It is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).  In exercising that discretion, the Ninth Circuit has considered the following factors: "[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (referring to these as the "*Hanlon* factors").  However, "[t]he relative degree of importance to be

---

[3]      All internal citations and quotations are omitted, unless otherwise indicated.

attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Moreover, a court need not consider all of these factors, or may consider others. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Accordingly, weighing the *Hanlon* factors is *not* an adjudication of the merits of the case.

Additionally, when a settlement agreement is negotiated prior to formal class certification, courts must ascertain whether the parties colluded. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) (citing *In re Bluetooth*, 654 F.3d at 946). Signs of collusion – absent here - include: (1) when class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) when the parties negotiate a "clear sailing" deal providing for payment of attorneys' fees separate and apart from class funds without objection by the defendant, which potentially enables a defendant to pay class counsel excessive fees and costs in exchange for accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund. *Bluetooth*, 654 F.3d at 947.

Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*.

The Settlement is the product of arm's-length negotiations between Lead Counsel and the Settling Defendants' counsel. It was only reached after the FAC was dismissed and Plaintiffs conducted further investigation. The arm's-length negotiations between experienced counsel on

both sides first took place in late December 2016 and early January 2017 and resulted in an

agreement in principle on December 26, 2016, an MOU executed on January 5, 2017, an original

Stipulation executed on March 27, 2017, and a revised Stipulation filed on May 26, 2017.

Tuccillo Decl. ¶¶11-18.  As a result of these efforts, Lead Counsel negotiated a fair Settlement,

taking into account the costs and risks of continued litigation, including the inherent problems of

proof of, and possible defenses to, the claims asserted in the Action, as already highlighted by

this Court's Dismissal Order.  Under these circumstances, Plaintiffs respectfully submit that the

Settlement meets the Ninth Circuit standard for approval.

### B.  A Review Of The *Hanlon* Factors Demonstrates That The Settlement Is Fair, Reasonable, And Adequate, And Supports Final Approval

#### 1.  The Overall Strength Of Plaintiffs' Case, Including The Risk, Expense, Complexity, And Likely Duration of Further Litigation

The expense, complexity, and possible duration of litigation are key factors in evaluating

a settlement's reasonableness.  *See, e.g.*, *Torrisi*, 8 F.3d at 1375-76 ("the cost, complexity and

time of fully litigating the case" rendered the settlement fair).  Lead Counsel, highly experienced

in litigating and resolving complex securities class actions, carefully evaluated the merits, in light

of all risks and weaknesses, before Plaintiffs entered into the Settlement.  Plaintiffs and Lead

Counsel made a reasoned strategic decision to settle before subjecting a further amended

complaint to a motion to dismiss.

Although Lead Counsel and Plaintiffs believed that the case was strong, based on the

substantial research and investigation conducted, they were cognizant of the substantial risk posed

to the Settlement Class in continuing this Action, particularly in light of the Dismissal Order.  *See*

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10,

2005) ("It is known from past experience that no matter how confident one may be of the outcome

of litigation, such confidence is often misplaced"); *see also In re Sumitomo Cooper Litig.*, 189

F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by

a court only to have the class' ultimate recovery be less than the proposed settlement).

### a.     PSLRA Cases Have Significant Obstacles To Success

In addition to the general risks of any litigation, heightened risk existed because of the application of both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which significantly raised the standards for investors to successfully plead and prosecute securities class actions while imposing a mandatory discovery stay pending resolution of a motion to dismiss.  To succeed on their §10(b) claim, Plaintiffs would have to plead and prove, *inter alia*, that Defendants knowingly, or with deliberate recklessness, issued materially false and misleading statements and omissions of fact, that the Settlement Class members relied thereon (*e.g.*, establish class-wide reliance by the fraud-on-the-market doctrine via proof of an efficient market for Hortonworks stock), and that Settlement Class Members were damaged when the truth was revealed.  Such pleading requirements surely would have been further contested by the Settling Defendants were the Action to continue.  The §20(a) control person claim also faced significant hurdles of proof as regards Defendants Bearden and Davidson.

### i.     The Risk Of Establishing Falsity And Scienter

Obtaining a favorable jury finding on the elements of falsity and scienter is difficult, even more so after the Dismissal Order.  Plaintiffs would have to demonstrate that Defendants fraudulently misled investors, throughout the Class Period, about Hortonworks' liquidity and its intent to and need to raise capital through a dilutive equity offering.  While Plaintiffs considered filing a further amended complaint, they were concerned it might not survive a second motion to dismiss and were aware of the challenges of proving their claims at trial.  Indeed, Defendants insisted that Plaintiffs could not establish that Defendants' statements were materially false or misleading, or that they acted with scienter.  Defendants also contended that their statements were protected by the PSLRA's safe harbor because they were opinions, forward-looking, and accompanied by meaningful cautionary language.

### ii.     The Risk Of Proving Transaction And Loss Causation And Damages

Proving that the misstatements caused a significant loss for investors, and that the Settlement Class suffered damages as a result of the Settling Defendants' misconduct, issues not

reached by the Court in its Dismissal Order, also posed a challenge.  Determining the amount of losses, or that the alleged corrective disclosures and events actually caused the declines in Hortonworks' stock, would have required complicated expert testimony and use of methodologies that are debated among economists.  This would create a "'battle of experts,' [in which] the outcome cannot be guaranteed." *In re Amgen Sec. Litig.*, 07-cv-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *7 (C.D. Cal. Oct. 25, 2016).  Thus, vigorous challenges to reliance, transaction and loss causation, and damages posed a significant risk on any further motion to dismiss by the Settling Defendants, at summary judgment, trial, and on appeal.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (jury verdict in §10(b) action reversed due to failure to prove loss causation).

### b.    Continued Litigation Would Be Risky And Expensive

Regardless of the ultimate outcome, there is no question that further litigation against the Settling Defendants would have been expensive and complex. It is widely acknowledged that class action litigation is inherently complex. *See, e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation").  Securities class actions, in particular, are typically complex and expensive to prosecute. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *6.

Even if Plaintiffs' further amended complaint survived a new motion to dismiss, for class certification, Plaintiffs would have had to procure an expert's declaration on the issue of market efficiency (as would have the Settling Defendants).  In addition to full briefing, documents would have been produced and expert depositions would have been taken.  Merits discovery would likely have involved thousands of documents and a substantial number of depositions, including those of the Settling Defendants and other Hortonworks personnel.  Thereafter, the parties would engage in expert discovery on questions of reliance, loss causation and damages.  Expert discovery and trial preparation would be expensive and complex.  *See Heritage*, 2005 WL 1594403, at *6 (class actions have a well-deserved reputation as being the most complex).

Accordingly, the likely duration and expense of further litigation against the Settling

Defendants also supports a finding that the Settlement is fair, reasonable, and adequate.  Even if a class had been certified, the Settling Defendants' likely motion(s) to dismiss and likely motion(s) for summary judgment would have made continued prosecution of the action complex, expensive, and lengthy with a more favorable outcome than the current Settlement highly uncertain. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").  After trial, any appeal would be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  Thus, the present value of a certain recovery at this time, already fully funded, as opposed to the mere chance for a greater one substantially down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the risk that any further amended complaint could be dismissed again and the Settlement Class could receive no recovery.

At this point, after a decision on Settling Defendants' motion to dismiss and after intensive and extensive settlement negotiations, Plaintiffs and Lead Counsel are well aware of the strengths and weaknesses of their case and made a readily-justified decision to avoid the additional risk, delay, expense, and complexity of further litigation. *See Syncor*, 516 F.3d at 1101 (district court abused its discretion in granting defendants' summary judgment motion after the parties notified the court of entering into a binding class action settlement); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 2. The Risks Of Achieving Class Action Status And Maintaining That Status Throughout Trial

The Settlement Class was preliminarily certified for settlement purposes only.  If not for this Settlement, the Settling Defendants would have strongly contested any motion for class certification and, if certified, would have sought every opportunity to have a certified class de-

10

certified.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[4]  Thus, the risks of certifying the action and maintaining certification throughout the litigation support approval.

### 3.     The Amount Obtained In The Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.  A settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *See Mego*, 213 F.3d at 459.

The law and public policy that favors settlements is particularly strong here where a seven-figure recovery provides a favorable result, given the procedural posture of the case.  In a well-reasoned Dismissal Order, this Court already dismissed the Plaintiffs' claims, without prejudice, after careful consideration of detailed briefing by the parties.  Additionally, while Lead Counsel and its investigator did identify additional witnesses in the month permitted for further amendment, Lead Counsel was not fully convinced that the outcome would be different if the

---

[4]     Indeed, were a class to be certified, the Settling Defendants could petition for immediate interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), which provides that a certification order may be "altered or amended before final judgment." *See, e.g.*, *Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007).  Thus, maintaining certification is an expensive and risky enterprise. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2009).

pleadings were amended to include their statements. These considerations strongly favored entering into the Settlement while the window for further amendment remained open.

It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from the Settling Defendants had it successfully defeated the anticipated motion to dismiss a further amended complaint or successfully reversed the Court's Dismissal Order on appeal, defeated a subsequent motion for summary judgment, and ultimately established liability at trial. Such outcomes are highly speculative, particularly given the current procedural posture, and would have required years of additional efforts at high cost. During settlement negotiations, the Settling Defendants maintained that they had meritorious defenses to the claims alleged in the Action. They would have raised such challenges at every opportunity, including a second motion to dismiss, making any further successful prosecution of the Action and any theoretical recovery highly uncertain. While Plaintiffs and Lead Counsel believe their claims were meritorious, they acknowledged these considerable risks, concluding it was in the Settlement Class's best interests to settle now. The risk that Plaintiffs would be unable to recover a greater amount further down the road as a result of litigation setbacks was carefully considered in arriving at this Settlement.

The Settlement total value is $1,100,000.00 in cash. This outcome provides a fair and reasonable recovery under the circumstances, providing an immediate and tangible benefit to the Settlement Class that is well within a range of reasonableness in light of a possible recovery and the substantial risks presented by the litigation.

### 4.   The Extent Of Discovery Completed And Stage Of The Proceedings

The stage of the proceedings and the amount of information available to the parties to assess strengths and weaknesses are additional factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 458. The parties need not have engaged in extensive formal discovery, as long as they have engaged in sufficient investigation of the facts to enable them and the Court to intelligently appraise the Settlement.

Throughout the PSLRA-mandated discovery stay, Lead Counsel conducted a thorough review of Hortonworks's SEC filings and press releases from the Class Period, as well as other publicly-available news reports and information relating to Hortonworks.  *See* Tuccillo Decl. ¶26.  Based on this public information and on private investigation work, including interviews with confidential witnesses, Plaintiffs filed an amended complaint on July 28, 2016.   After the Dismissal Order, Lead Counsel conducted additional factual investigation.  *Id.*

As a result, Lead Counsel is thoroughly familiar with the facts and had ample opportunity to assess the strengths and weaknesses of the claims, so as to appraise the settlement's sufficiency.  *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11- CV-05831, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) (approving Settlement of securities class action at parallel stage of proceedings).  Thus, Plaintiffs and Lead Counsel did a thorough investigation before agreeing to the proposed Settlement.   During ensuing negotiations over the terms of the Settlement and, later, its documentation, the parties had ample opportunity to present the strengths of their respective cases and to hear one another's perspectives as to weaknesses.   Tuccillo Decl. ¶¶13-21.

Lead Counsel and Plaintiffs gained sufficient information to negotiate and evaluate the Settlement before more time or resources were expended on further litigation with the Settling Defendants.   Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing."  *In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  As a result, courts regularly approve settlements reached relatively early in the formal litigation process. *See, e.g.*, *Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."); *In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and

prior to significant discovery).   For this reason, courts have commended class counsel for recognizing when, as here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).   In sum, the parties reached the Settlement when they were well informed as to the facts, legal issues, and risks of the Action.

### 5.   Experienced Counsel Negotiated The Settlement In Good Faith And At Arm's-Length And Believe It Is Fair, Reasonable, and Adequate

Courts recognize that the opinion of experienced counsel supporting the settlement after hard-fought negotiations is "entitled to considerable weight." *See, e.g.*, *Elliott v. Rolling Frito-Lay Sales, LP,* 2014 U.S. Dist. LEXIS 83796, at *21 (C.D. Cal. June 12, 2014); *Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage*, 2005 WL 1594403, at *9.  Lead Counsel is one of the oldest plaintiff-side securities litigation firms in the country, with decades of experience litigating securities class actions nationwide – including within this Circuit and District. Tuccillo Decl. ¶25. Ex. 3 (Lead Counsel's firm resume).  Throughout the litigation and settlement negotiations, the Settling Defendants were represented by very skilled and highly respected counsel at Morrison & Foerster LLP.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

The parties' negotiations were thorough, and the Settlement was reached without collusion after good-faith bargaining among the parties.  *See* Tuccillo Decl. ¶¶13-21.  Through these months of effort after the Dismissal Order, Lead Counsel negotiated a fair Settlement, taking

into account the costs and risks of continued litigation, including the substantial risk that Plaintiffs' claims against Hortonworks would be again dismissed, this time with prejudice.

Under the regime put in place with the enactment of the PSLRA, the Plaintiffs' support for a settlement should be accorded "special weight because [the Plaintiffs] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).   Plaintiffs' strong support of the Settlement, as well as the arm's-length nature of the negotiations here, further favor its approval. *See* Arvidson Decl. ¶5; Monachelli Decl. ¶5.

### 6.  The Absence Of A Governmental Participant

There was no governmental participant litigating on behalf of or alongside the Class in this Action.   Without this private civil action, there would have been no recovery for the Class. Accordingly, this factor supports approval of the Settlement.

### 7.  The Overwhelmingly Positive Reaction Of The Settlement Class

The reaction of the Settlement Class to the Settlement, which was extremely favorable here, is another factor in determining the adequacy of the Settlement. *See Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. 06-cv-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").   To date, ***no Settlement Class member has objected*** to the Settlement, the Plan of Allocation, Lead Counsel's fee and expense request, or Plaintiffs' requests for compensatory awards, ***and only one*** S*ettlement Class member requested to be excluded* from the Settlement Class, despite the mailing of over 8,285 notices.[5] *See* Evans Decl. ¶¶10-12.   In actuality, thus far, ***over 1,700 Settlement Class members have submitted claims*** so as to benefit from the Settlement recovery.  *Id.*

---

[5]      Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly examine counsel's fee motion," the deadline for filing any objections is September 1, 2017.

### 8.        The Absence Of Collusion Among The Negotiating Parties

The Settlement displays none of the *Bluetooth* signs of a collusive agreement. *In re LinkedIn*, 309 F.R.D. at 589.  Here, a total recovery of $1,100,000.00 was put into interest-bearing escrow as the Settlement Consideration, out of which Lead Counsel, on behalf of all Plaintiffs' Counsel, is seeking an award of fees and expenses; the Settlement does not include a clear sailing agreement; and any remaining funds remain in the Settlement fund to be distributed to Settlement Class Members, or *cy pres* recipients - no amount reverts to Settling Defendants.

## V.        NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

Lead Counsel provided the Settlement Class with adequate notice of the Settlement. The Claims Administrator disseminated over **8,285** copies of the Court-approved short-form Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort, from multiple sources.  Evans Decl. ¶¶5-6.  This Notice directed Settlement Class Members to the Claims Administrator's website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation, along with the revised deadlines approved by the Court, were posted. *Id.* at ¶4.  The Claims Administrator also sent 1,493 letters to Nominee Account Holders and Institutional Groups contained on a master mailing list of the 836 largest banks and brokerage companies, as well as 657 mutual funds, insurance companies, pension funds, and money managers that may have traded or owned Hortonworks common stock in their clients' or their own accounts. *Id.* at ¶¶4-5.  The Court-approved Summary Notice was published on the GlobeNewswire on July 3, 2017. *Id.* at ¶8.  The Claims Administrator also sent the Depository Trust Company ("DTC") the Notice for it to publish on the Legal Notice System ("LENS"), which provides DTC participants the ability to search and download legal notices and receive email alerts based on particular notices or CUSIPs once the legal notice is posted. *Id.* at ¶7.  This method of notice, previously approved by the Court, is appropriate because it directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

The Notice program provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It informed the Settlement Class of, among other things: (1) the amount of the Settlement; (2) the reasons why the parties proposed it; (3) that Lead Counsel would apply for an award of attorneys' fees not to exceed 28% of the Settlement Fund, litigation expenses not to exceed $50,000.00 advanced in connection with the Action up to the point of the Settlement, and compensatory awards to named Plaintiffs in the amount of $750.00 each; (4) the name, telephone number, and address of representatives of Lead Counsel available to answer questions; (5) the right of Settlement Class Members to object to the Settlement or to seek exclusion from the Settlement Class, and the consequences thereof; and (6) the dates and deadlines, as updated, for certain Settlement-related events. *See* Stipulation, Exhibits B1 and B2 (Dkt. Nos. 65-2 and 65-3); 15 U.S.C. § 78u-4(a)(7). It further explained that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim Forms under the Plan of Allocation, which it described. *Id.*

The Notice program was sufficient because it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008). It fairly apprised Settlement Class Members of their rights with respect to the Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Fed. R. Civ. P. 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.        THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation. Plaintiffs now request that the Court give final approval of the Plan of Allocation, for the purpose of administering the Settlement. The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant and is based on an estimation as to the

amount of artificial inflation in the prices of Hortonworks common stock during the Class Period. Tuccillo Decl. ¶24. It is substantively similar to other plans that have been approved to successfully allocate recoveries in other securities class actions. *Id.* Plaintiffs respectfully submit that the Plan of Allocation is fair, reasonable and adequate, and should be approved.

The proposed Plan of Allocation was fully described in the long-form Notice posted on the Claims Administrator's website, to which Settlement Class Members were directed via dissemination of the court-approved short-form Notice and the published Summary Notice, and has a rational basis. *See* Evans Decl. ¶¶4-5; Stipulation, Exhibits B1 (Dkt. No. 65-2) at 15-16 and C (Dkt. No. 65-4). Here, the proposed Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, based on factors such as when and at what prices the Claimant purchased and sold Hortonworks common stock. *Id.*

The Plan of Allocation is straightforward, as the Settlement Class Period is just over six (6) months, from August 5, 2015 through January 16, 2016. The Plan of Allocation assigns greater weighting to claims arising in the latter part of the Class Period, which are comparatively stronger. *Id.* Lead Counsel formulated the Plan of Allocation with the help of a damages expert, with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. *See* Stipulation, Exhibit B1 at15-16 (Dkt. No. 65-2) and D (Dkt. No. 65-5); Tuccillo Decl. ¶24; *Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Assessment of a plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Van Wingerden v. Cadiz, Inc.*, 2017 U.S. Dist. LEXIS 18800 at *25 (C.D. Cal. Feb. 8, 2017)

(quoting *Omnivision*, 559 F. Supp. 2d at 1045); *see also Nguyen v. Radient Pharms. Corp.,* No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

Here, there have been ***no objections*** and ***only one exclusion request*** from any potential Settlement Class Member, despite over **8,285** notices mailed and over **1,700** claims submitted. *Heritage*, 2005 WL 1594403, at *39-40 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the Court finds the plan of allocation as fair and adequate."). Lead Counsel therefore believes the Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## VII.     SETTLEMENT CLASS CERTIFICATION REMAINS WARRANTED

### A.     The Settlement Class Satisfies The Requirements of Rule 23(a)

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class must be so numerous that joinder of all members is impracticable. Here, over 8,285 Notices were mailed to potential Class Members. Evans Decl., ¶¶5-6. Joinder of these thousands of Class Members would be impracticable. Moreover, millions of Hortonworks shares were traded on the NASDAQ during the Class Period, when it had 44,025,832 shares of common stock outstanding. *See* FAC at ¶86. A class of this size is sufficiently numerous to make individual joinder impracticable. *See In re UTStarcom Sec. Litig.*, No. 04-cv-04908 JW, 2010 WL 1945737 at *4 (N.D. Cal. May 12, 2010); *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994). Thus, the numerosity element is easily satisfied.

To satisfy commonality under Fed. R. Civ. P. 23(a)(2), there must be questions of either law or fact common to the class. This requirement is readily met here, where questions common to all Class Members include:  (i) whether the federal securities laws were violated by the Settling

Defendants' alleged acts; (ii) whether statements made by the Settling Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about Hortonworks; (iii) whether the Settling Defendants acted knowingly or recklessly in issuing any false and misleading public statements; (iv) whether the price of Hortonworks securities during the Class Period was artificially inflated by the Settling Defendants' conduct; and (v) the extent of damages suffered by the Settlement Class and the appropriate measure for those damages.   Securities actions containing common questions such as these have been held to be prime candidates for class certification.[6]   Additionally, because the core complaint of all Settlement Class Members is that they purchased Hortonworks shares at artificially inflated prices, the commonality requirement is satisfied.

Typicality under Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the representative parties must be typical of the class's claims.   *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).   Differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification.   *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).   In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *see also West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, at *5 (E.D. Cal. June 13, 2006).

Plaintiffs' claims are typical of those of the other Settlement Class Members and are based on the same legal theories.   *See UTStarcom*, 2010 WL 1945737, at *5 (test for typicality is

---

[6]   *See UTStarcom*, 2010 WL 1945737 at *4 (common questions of law and fact as to whether Defendants engaged in fraudulent scheme, stock was artificially inflated, and misstatements and omissions caused class members to suffer economic losses).   Here, there are common questions of law and fact because Defendants' alleged misconduct allegedly affected all Settlement Class Members in the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated the price of Hortonworks shares which, when corrected, damaged the Settlement Class Members.   *See, e.g. In re VeriSign, Inc. Sec. Litig.*, No. 02-cv-02270-JW, 2005 WL 7877645, at *10 (N.D. Cal. Jan. 13, 2005); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).

"whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Plaintiffs, like the other Settlement Class Members, purchased Hortonworks shares in the same manner and pursuant to the same alleged fraud during the same time period.  *See VeriSign*, 2005 WL 7877645, at *10 ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *see also Emulex*, 210 F.R.D. at 721.  Moreover, Plaintiffs are not subject to any unique defenses that could make them atypical.  *See Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 266-67 (N.D. Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 635-36 (C.D. Cal. 2009).

Finally, Plaintiffs satisfy the adequacy prong of Fed. R. Civ. P. 23(a)(4), as they have fairly and adequately protected the Settlement Class's interests.  To satisfy this requirement, a proposed class representative must be free of interests antagonistic to other class members, and counsel representing the class must be qualified, experienced and capable of conducting the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.  Plaintiffs' interests in obtaining a fair, reasonable, and adequate settlement of the claims asserted are consistent with those of the Settlement Class Members, since, as described above, they have typical and coextensive claims, and under the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  Plaintiffs are represented by highly-qualified counsel with extensive experience in securities class action litigation.  Plaintiffs and Lead Counsel prosecuted this Action, engaged in extensive and intensive negotiations with Settling Defendants, and obtained the $1,100,000.00 Settlement.  Plaintiffs have regularly communicated with Lead Counsel throughout the Action, and have fairly and adequately protected and advanced the interests of the Settlement Class. Tuccillo Decl. ¶ 33; Arvidson Decl. ¶¶ 4-5; Monachelli Decl. ¶¶ 4-5.  Thus, Plaintiffs are adequate representatives of the Settlement Class, and Lead Counsel, one of the oldest plaintiff-side

securities litigation firms in the U.S. (*see* Tuccillo Decl. Exhibit 3) is qualified, experienced, and capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

### B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

This Action also meets the requirements of Rule 23(b)(3).   Questions of law or fact common to the Settlement Class predominate over questions affecting only individual members, and a class action is the superior method of adjudication.   *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179, 2184 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519. 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. 09-cv-02338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010).

"[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001).   When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under rule 23(b)(3) are relaxed because the Court does not need to consider the difficulties of managing the class in future litigation or at trial.   *See, e.g.*, *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011); *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05-cv-2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).

As discussed above, there are a number of common questions of law and fact that would warrant class certification of this matter.   These questions clearly predominate over individual questions because the Settling Defendants' alleged conduct impacted all Settlement Class Members in the same way.   *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").   Issues relating to the Settling Defendants' liability (including as to falsity, materiality, scienter, and loss causation) are common to all Settlement Class Members.   *See id.*; *see also LDK Solar*, 255 F.R.D. at 530; *UTStarcom,* 2010 WL 1945737, at *9; *Emulex*, 210 F.R.D. at 721 ("The predominant questions

of law or fact at issue in this case are the alleged misrepresentations defendants made during the class period and are common to the class.").

Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs as Settlement Class Representatives, and appointing Lead Counsel as counsel for the Settlement Class.  *See*, *e.g.*, *Gittin v. KCI USA, Inc.*, No. 09-cv-05843 RS, 2011 WL 1467360, at *19 (N.D. Cal. Apr. 12, 2011).

## VIII.        CONCLUSION

The complexity of the facts at issue, the substantial expenses if this litigation were to continue to trial, and the risks attendant to prevailing against another motion to dismiss, a subsequent motion for summary judgment, trial and appeals, weigh heavily in favor of accepting a recovery of $1,100,000.00 cash now, via the Settlement, on behalf of the Settlement Class.  The Settlement presents a sizable, immediate, and certain benefit to Settlement Class Members and Plaintiffs.  Accordingly, Plaintiffs respectfully request that this Court approve the Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any claim that arise from or relate to the subject matter of the Action against the Settling Defendants; dismiss the Action with prejudice as to the Settling Defendants; certify the Settlement Class for settlement purposes; and enter Final Judgment in the form attached as Exhibit 4 to the Tuccillo Declaration (which is the same as the Proposed Order and Final Judgment previously submitted to the Court as Exhibit E to the revised Stipulation on May 26, 2017 (Dkt. No. 65-6)).[7]

---

[7]        The Court's approval of the Plan of Allocation can be made by entry of the Proposed Order appended as Exhibit 5 to the Tuccillo Declaration, which is the same as the Proposed Order Regarding Plan of Allocation, Award of Attorneys' Fees and Expenses, And Plaintiff Compensatory Awards, which was previously submitted to the Court as Exhibit F to the revised Stipulation on May 26, 2017 (Dkt. No. 65-7).

Dated: August 25, 2017

**POMERANTZ LLP**

*By: /s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
Jeremy A. Lieberman
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
        jalieberman@pomlaw.com
        mltuccillo@pomlaw.com

Jennifer Pafiti
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
E-mail: jpafiti@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Plaintiffs and Proposed Lead*
*Counsel for the Settlement Class*

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND
PLAN OF ALLOCATION - Case No. 3:16-cv-00980-SI

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 24, 2017.


*/s/ Matthew L. Tuccillo*_____
Mathew L. Tuccillo

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND
PLAN OF ALLOCATION - Case No. 3:16-cv-00980-SI