Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

Jeremy A. Lieberman
Matthew L. Tuccillo
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
        mltuccillo@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM MONACHELLI and RANDALL A. ARVIDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>HORTONWORKS, INC., ROBERT G. BEARDEN, and SCOTT J. DAVIDSON,<br><br>                                   Defendants. | Case No. 3:16-cv-00980-SI<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 22, 2017<br>Time:   10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br>Judge:  Hon. Susan Illston |

1    **PLEASE TAKE NOTICE** that, on September 22, 2017 at 10:00 a.m. or as soon

2    thereafter as counsel may be heard, a Settlement Fairness Hearing shall take place before the

3    Honorable Susan Illston, United States District Judge, in Courtroom 1, 17th Floor, San Francisco

4    Courthouse, 450 Golden Gate Avenue, San Francisco, CA, 94102, Lead Plaintiff Randall A.

5    Arvidson ("Arvidson" or "Lead Plaintiff") and Plaintiff William Monachelli ("Monachelli")

6    (together "Plaintiffs") will move for an order awarding attorneys' fees, and authorizing

7    reimbursement of expenses, and for granting compensatory awards to Plaintiffs.

8        The requested award of attorneys' fees, reimbursement of expenses, and Plaintiff

9    compensatory awards are warranted under the fee-setting and expense reimbursement criteria

10   applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases. This

11   motion is supported by the papers submitted herewith: Plaintiffs' Motion for Final Approval of

12   Settlement, Class Certification and Plan of Allocation and Memorandum of Law in Support

13   Thereof ("Final Approval Brief"); Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl.");

14   Declaration of Lead Plaintiff Arvidson ("Arvidson Decl."); Declaration of Plaintiff Monachelli

15   ("Monachelli Decl."); Declaration of Sarah Evans Concerning the Mailing of Notice, Publication

16   of Summary Notice, Exclusion Requests Received and Objections Submitted ("Evans Decl.");

17   the Stipulation of Settlement and its exhibits; and the other filings in this case, and such other

18   and further representations as Lead Counsel may make at the hearing on this matter.

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs' request for an award of attorneys' fees and expenses, in the amount of 28% of the gross Settlement Fund, payable to Lead Counsel from the Settlement Fund, should be granted.

2.     Whether Lead Counsel's out-of-pocket expenses of $38,349.20 were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed from the Settlement Fund.

3.     Whether Plaintiffs' requests for $750.00 each ($1,500.00 total) in reimbursement for their time, costs and expenses directly relating to their representation of the Settlement Class should be granted and paid from the Settlement Fund.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 3

     A.    Factual Allegations, Procedural History And Settlement Negotiations ................. 3

     B.    Specific Efforts Of Lead Counsel ......................................................................... 3

ARGUMENT ...................................................................................................................... 5

I.      LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES AND GRANTED
REIMBURSENT OF EXPENSES FROM THE COMMON FUND ............................... 5

     A.    Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common
Fund ..................................................................................................................... 5

     B.    It Is Appropriate To Award A Reasonable Percentage Of The Common Fund
As Attorneys' Fees ............................................................................................... 6

     C.    The Requested Attorneys' Fees Are Reasonable When Viewed Against The
Ninth Circuit Norms ............................................................................................ 8

     D.    Relevant Ninth Circuit Factors Support The Requested Award Of Attorneys'
Fees ...................................................................................................................... 9

          1.    Lead Counsel Achieved A Favorable Result For The Class .................... 10

          2.    The Risks Of Litigation Were High ...................................................... 11

          3.    The Contingent Nature Of The Fee And The Financial Burden Carried
By Counsel ............................................................................................ 12

          4.    The Skill Required And The Quality Of The Work ............................... 14

          5.    A Lodestar Cross-Check Shows The Fee Request Is Reasonable ........... 15

          6.    The Settlement Class's Reaction To The Fee Request Was
Overwhelmingly Positive ...................................................................... 16

     E.    Lead Counsel's Expenses are Reasonable and Were Necessary to Achieve the
Benefit Obtained ................................................................................................ 17

     F.    The Requested Awards to Plaintiffs Should Be Approved .................................. 19

II.     CONCLUSION .................................................................................................. 21

iii

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:16-cv-00980-SI

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

5
*Abrams v. Lightolier Inc.*,
   50 F.3d 1204 (3d Cir. 1995)..................................................................18

6
*Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB,
7
   2011 WL 1883188 (E.D. Cal. Jan. May 17, 2011) ................................19

8
*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..............................................................13

9
*Backman v. Polaroid Corp.*,
10
   910 F.2d 10 (1st Cir. 1990)...................................................................13

11
*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) .................................................................................8

12

13
*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988)...........................................................14

14
*Berkey Photo, Inc. v. Eastman Kodak Co.*,
15
   603 F.2d 263 (2d Cir. 1979)..................................................................13

16
*Blum v. Stenson*,
   465 U.S. 886 (1984)..................................................................................6

17

18
*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................5

19

20
*Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS,
   2011 WL 2648879 (E.D. Cal. June 30, 2011) .....................................10

21
*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
   8 F.3d 722 (10th Cir. 1993) ..................................................................18

22

23
*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) .................................................................7

24
*Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK,
25
   2011 WL 4526673 (N.D. Cal. June 30, 2011) .....................................20

26
*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .................................................................7

27

28

*Cent. R.R. & Banking Co. of Ga. v. Pettus*,
  113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885) ...................................................... 7

*Craft v. Cty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................. 10

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ............................................................................ 17

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,
  2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ........................... 15, 16

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ................................................................................. 15

*Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS,
  2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ......................................................... 11

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)................................................................................... 15

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................................... 7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..................................................................................... 18

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ............................................................................... 13

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................... 7, 9

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV-10-06352-MMM-JCGx,
  2014 WL 10212865 (C.D. Cal. July 28, 2014).................................... 8, 11, 14, 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................... 7, 9

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................. 11

*In re Businessland Sec. Litig.*, No. C-90-20476-RFP,
  1991 WL 427887 (N.D. Cal. June 14, 1991).......................................................... 18

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................... 13

*In re Equity Funding Corp. of Am. Sec. Litig.,*
  438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................... 15

*In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................... 11

*In re Gen. Instrument Sec. Litig.,*
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................................... 14

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................ 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995)........................................................................... 6

*In re Heritage Bond Litig.,*
  233 F. App'x 627 (9th Cir. 2007) ................................................................. 6

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX),
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................... 11, 13, 14, 17

*In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC,
  2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) ............................................ 18

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................. 11, 15

*In re Immune Response Sec. Litig.,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................ 10, 13, 18

*In re JDS Uniphase Corp. Sec. Litigation*, No. C-02-1486-CW,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................ 13

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.,*
  No. 09-cv-7670, MDL 2103, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. 2011) .................. 20

*In re Linkedin User Privacy Litig.,*
  309 F.R.D. 573 (N.D. Cal. 2015) (J. Davila) ............................................. 19, 20

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD,
  2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ............................................... 18

*In re Media Vision Tech. Sec. Lit.,*
  913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................... 18

*In re Mercury Interactive Corp. Sec. Litig.,*
  618 F.3d 988 (9th Cir. 2010) ...................................................................... 17

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................... 7, 11, 13, 14

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................ 20

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................................... 10

*In re Pub. Serv. Co. of New Mexico*, No. 91-0536M,
   1992 WL 278452 (S.D. Cal. July 28, 1992) ................................................. 14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ............................ 8

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 8

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ............................................................................. 6

*In re Veritas Software Corp. Sec. Litig.*,
   396 F. App'x 815 (3d Cir. 2010) .................................................................... 20

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................ 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................ 6, 11, 12, 16

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) ............................................................................ 6

*In re Xcel Energy, Inc., Sec., Derivative & ''ERISA'' Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................... 20

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ............................................................................. 7

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ................................................ 9, 14

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS,
   2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ............................................... 18

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) ................................................................ 18

*Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS,
    2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ..................................................... 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .................................................................... 6, 7

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ........................................................................ 8

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) .............................................................................. 7

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 19

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................ 6

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ................................................................... 12, 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 19

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .......................................................................... 7

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................ 8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................ 6

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................ 11, 16

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) .......................................................................... 5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................... 7, 9, 10, 11, 13, 15, 16

## **Statutes**

15 U.S.C.A. §77z-1(a)(6)................................................................................. 8

15 U.S.C.A. §78u-4(a)(6)................................................................................. 8

15 U.S.C. §78u-4(b)......................................................................................... 6

15 USCS § 78u-4 ............................................................................................................ 19

PSLRA .............................................................................................. 8, 11, 12, 19, 20

## **Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................... 1

Fed. R. Civ. P. 23(h) ...................................................................................................... 6

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:16-cv-00980-SI

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Randall A. Arvidson ("Arvidson" or "Lead Plaintiff") and Plaintiff William Monachelli ("Monachelli") (together "Plaintiffs"),[1] individually and on behalf of all other members of the Settlement Class, respectfully move this Court for an Order: (1) awarding attorneys' fees of 28% of the gross Settlement Fund of $1,100,000.00 in cash, or $308,000.00, payable to Lead Counsel; (2) granting reimbursement of $38,349.20 in reasonable and necessary expenses that were incurred by Counsel in prosecuting this Action, likewise payable to Lead Counsel; and (3) approving compensatory awards of $750.00 each ($1,500.00 total) for the Plaintiffs.

## I.    INTRODUCTION

Lead Counsel undertook the prosecution of this Action on a contingency fee basis, spending 796.85 in the aggregate, worth a total of $497,443.50 in heretofore uncompensated lodestar, and incurring a total of $38,349.20 in unreimbursed out-of-pocket expenses through the course of the litigation leading up to and including the Settlement and related efforts through final approval.  *See* Tuccillo Decl. ¶¶28-32.  Through these efforts, Lead Counsel obtained a Settlement for a gross recovery of one million one hundred thousand dollars ($1,100,000.00) in cash – an excellent benefit to the Settlement Class, particularly given the risks of further litigation against the Settling Defendants in light of the Court's December 5, 2016 Order granting Defendants' motion to dismiss (Dkt. No. 52) ("Dismissal Order").

As compensation for their efforts, Lead Counsel respectfully requests an award of attorneys' fees in the amount of twenty-eight percent (28%) of the gross Settlement Fund (which equates to $308,000.00), to be payable to Lead Counsel.  This requested fee award is within the range typically awarded in similar cases in the Ninth Circuit, is consistent with the benchmark often invoked in this Circuit, and is readily justified by a lodestar cross-check.  Indeed, a cross-

---

[1]    Unless otherwise defined, capitalized terms herein have the same meanings as assigned in the Stipulation and Agreement of Settlement (Dkt. No. 65) (the "Stipulation").

check against lodestar results in a negative multiplier of 0.62,[2] and confirms the fairness and reasonableness of the requested fees, particularly where Lead Counsel has excluded from these calculations any time incurred preparing this Motion (as is customary) and the 28% fee figure was publicized through the notice program but generated no objections.

Lead Counsel also seeks reimbursement of the out-of-pocket expenses incurred in prosecuting these claims in the total amount of $38,349.20.  *See* Tuccillo Decl. ¶30.  The expenses are reasonable, were necessarily incurred as part of the successful prosecution of this Action, and are of the kind regularly reimbursed by courts within this Circuit.  Significantly, they are roughly 3/4 of the figure reported via the notice program, but generated no objections.

Additionally, Plaintiffs seek compensatory awards of $750.00 each ($1,500.00 total) for their personal time and effort dedicated to prosecuting this Action, including representing the Settlement Class, overseeing Lead Counsel through periodic communications, and securing the Settlement.  *See* Tuccillo Decl. ¶33; Arvidson Decl. ¶¶3-4, 6; Monachelli Decl. ¶¶3-4, 6.  Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should thus be awarded by the Court, along with the Plaintiffs compensatory awards.  Here, too, the Plaintiff awards were publicized through the notice program but generated no objections.

As ordered by the Court in its Preliminary Approval Order (Dkt. No. 66), copies of the short-form Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Notice") have been disseminated to over **8,285** potential Settlement Class Members and nominees.[3]  Evans Decl. ¶¶5-6.  The Notice directed

---

[2]   This multiplier is the result of dividing the proposed fee award (calculated as $1,100,000.00 multiplied by 28%) by the product of the total lodestar incurred by Lead Counsel (with such lodestar calculated as the number of hours of each timekeeper devoted to the case against Settling Defendants multiplied by each timekeeper's current reasonable hourly rate).

[3]   The Claims Administrator also sent 1,493 letters to the Nominee Account Holders and Institutional Groups contained on a master mailing list of the 836 largest banks and brokerage companies, as well as 657 mutual funds, insurance companies, pension funds, and money managers that may have traded or owned Hortonworks common stock in their clients' or their

Settlement Class Members to the Claims Administrator's website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation were posted.  *Id*. at ¶4.  These materials stated that Lead Counsel would seek an award of attorneys' fees not to exceed 28% of the Settlement Fund, litigation expenses not to exceed $50,000.00, and compensatory awards to Plaintiffs in the amount of $750.00 each for their contributions to this Action.  *See* Stipulation, Exhibit B1 (Dkt. No. 65-2) at 2-3.  To date, **no Settlement Class Member has filed an objection** to these requests.[4]  *See* Evans Decl. ¶11.  To the contrary, **1,722** Settlement Class members (over 20% of the Notice recipients) have submitted claims, all without noting **any** objection.  This overwhelmingly favorable response by the Settlement Class strongly supports the reasonableness of the requested attorneys' fee award, reimbursement of expenses, and compensatory awards to the Plaintiffs.

Thus, Plaintiffs and Lead Counsel respectfully request that the Court grant this Motion.

## II.    BACKGROUND

### A.    Factual Allegations, Procedural History And Settlement Negotiations

The relevant facts supporting this motion along with the procedural history and settlement negotiations are set forth in more detail in the accompanying motion seeking final approval of the Settlement (in §§I-II) and in the Tuccillo Declaration at ¶¶5-21 and 26.

### B.    Specific Efforts Of Lead Counsel

In this Action, Plaintiffs would be required to prove that (i) Settling Defendants made false and misleading statements or omitted to disclose material facts regarding the sufficiency of Hortonworks' cash position and its intent to and need to raise capital through a dilutive equity offering; (ii) Settling Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature; and

---

own accounts.  Evans Decl. ¶¶4-5.  The Court-approved Summary Notice was published over the *GlobeNewswire* on July 3, 2017.  *Id.* ¶8.  The Claims Administrator also sent the Depository Trust Company ("DTC") the Notice for the DTC to publish on the Legal Notice System ("LENS"), which enables DTC participants to search and download legal notices as well as receive email alerts based on particular notices or CUSIPs.  *Id.* ¶7.

[4]    The deadline for filing any such objection, as extended, is September 1, 2017.  If any objections are filed, Lead Counsel will respond by September 8, 2017.

(iii) investors suffered injury as a result thereof.  To prosecute the Action, Lead Counsel engaged

in extensive work, which included:

- Reviewed and analyzed Hortonworks's Class Period and pre-Class Period SEC filings, annual reports, press releases, quarterly earnings call and industry and investment conference transcripts, and other public statements;

- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Hortonworks;

- Reviewed and analyzed stock trading data relating to Hortonworks;

- Hired a private investigator that located and interviewed numerous former Hortonworks employees as confidential witnesses with knowledge of the events relevant to the allegations in the Action;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Drafted and filed the initial complaint and the FAC;

- Filed an opposition to Defendants' motion to dismiss the FAC and an opposition to Defendants' request for judicial notice;

- Engaged in numerous telephonic resolution-oriented discussions and negotiations with counsel for Hortonworks;

- Following extensive arm's length negotiations with counsel for Settling Defendants, Lead Counsel, on behalf of the Settlement Class, obtained a favorable oral agreement in principal and committed it to a written Memorandum of Understanding to settle the Action;

- Participated in continued negotiation efforts over months to finalize the Settlement and its Exhibits;

- Prepared the motion papers and related documents necessary to provide notice of the Settlement to Settlement Class members and to obtain preliminary approval of the Settlement;

- Obtained competing bids for claims administration work related to the Settlement before selecting the most competitive bidder to serve as Claims Administrator;

- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account;

- Prepared for, traveled to California for, and participated in the hearing on preliminary approval of the Settlement.

- Engaged in further discussions and negotiations with the Settling Defendants' counsel to revise the Stipulation and its exhibits so as to address the Court's concerns articulated during the preliminary approval hearing;

- Finalized and re-filed the revised Stipulation and exhibits;

- Obtained preliminary approval of the settlement, and thereafter, worked with the Claims Administrator to effectuate notice and see the Settlement through the administration process;

- Prepared the motion papers and related documents necessary to obtain final approval of the Settlement; and

- Lead Counsel will travel to and conduct the final approval hearing on the Settlement in September 2017.

*See* Tuccillo Decl. ¶¶5-21, 26.

Lead Counsel's efforts to obtain the Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved. *Id.* ¶28. As compensation for these efforts, Lead Counsel respectfully requests this Court to award attorneys' fees of 28% of the Settlement Fund, plus reimbursement of $38,349.20 in out-of-pocket expenses incurred. Supported by ample case law, these requests are appropriate given the favorable resolution obtained for the Settlement Class, especially where, as here, the lodestar cross-check is negative.

## ARGUMENT

### I.   LEAD COUNSEL SHOULD BE AWARDED ATTORNEYS' FEES AND GRANTED REIMBURSENT OF EXPENSES FROM THE COMMON FUND

#### A.   Lead Counsel Is Entitled To An Award Of Attorneys' Fees From The Common Fund

It has long been recognized in this Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole."). "The court's authority to reimburse

the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 493-94 (2d ed. 1986).  The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994).

**B.      It Is Appropriate To Award A Reasonable Percentage Of The Common Fund As Attorneys' Fees**

Under applicable standards, an attorney fee award must be reasonable.  *See, e.g.*, 15 U.S.C. §78u-4(b); Fed. R. Civ. P. 23(h) ("[T]he court may award reasonable attorneys' fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007).  For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seeks a fee of 28% of the gross Settlement Fund.  The requested fee for the Settlement on behalf of the Settlement Class is calculated based upon the Settlement Fund amount of $1,100,000.00 in cash, with Lead Counsel requesting 28%, or $308,000.00.

Ample precedent supports Lead Counsel's request for this percentage of the Settlement Fund.  In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class."  465 U.S. 886, 900 n.16 (1984).  The Ninth Circuit has expressly approved the use of the percentage of recovery method in common fund cases.  *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).[5]  While courts

---

[5]      In fact, percentage-based fee awards in common fund cases have been approved by every Circuit Court that has addressed the issue.  *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.,*

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:16-cv-00980-SI

within the Ninth Circuit have discretion to choose whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this District often prefer a percentage-of-the-fund approach in common fund cases.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit for the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  In *Paul, Johnson*, the Ninth Circuit explained the underlying equitable principle:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
> &ast;&ast;&ast;
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (citations omitted).  Use of the percentage method also decreases the burden on courts by eliminating a full-blown, detailed, and time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  For these reasons, use of the percentage method "appears to be dominant."  *In re OmniVision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

---

*Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988).  The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases.  *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

1    Moreover, using the percentage method is proper in securities fraud cases. The plain

2    language of the PSLRA states that class counsel is entitled to attorneys' fees that represent a

3    "reasonable percentage" of the damages recovered by the class.  *See* 15 U.S.C.A. §78u-4(a)(6);

4    15 U.S.C.A. §77z-1(a)(6).  "By using this language, 'Congress plainly contemplated that

5    percentage-of-recovery would be the primary measure of attorneys' fees awards in federal

6    securities class actions.'"  *In re Am. Apparel, Inc. S'holder Litig*., No. CV-10-06352-MMM-

7    JCGx, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quoting *In re Telik, Inc. Sec. Litig*.,

8    576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d

9    294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("[T]he PSLRA has made percentage-of-

10   recovery the standard for determining whether attorney's fees are reasonable.").

11   Courts have recognized that, in addition to providing just compensation, awards of

12   attorneys' fees from a common fund also serve to encourage skilled counsel to represent those

13   who seek redress for damages inflicted on entire classes of persons and to discourage future

14   similar violations.  Indeed, the Supreme Court has emphasized that private securities actions,

15   such as the instant action, provide an effective weapon in the enforcement of the securities laws.

16   *See generally, Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also*

17   *Tellabs, Inc., v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) ("This Court has long

18   recognized that meritorious private actions to enforce federal antifraud securities laws are an

19   essential supplement to criminal prosecutions and civil enforcement actions brought, respectively,

20   by the Department of Justice and the [SEC]").

21   **C.    The Requested Attorneys' Fees Are Reasonable When Viewed Against The
           Ninth Circuit Norms**

22   The Settlement Fund consists of $1,100,000.00 in cash.  The instant request for a 28%

23   attorneys' fee is equal to $308,000.00 and is clearly within the range of such fees awarded under

24   similar circumstances and by judges in this District.

25   The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33$^{1/3}$% of

26   the total settlement value, with 25% considered something of a benchmark.  *Powers v. Eichen*,

27

28

229 F.3d 1249, 1256 (9th Cir. 2000); *see also Bluetooth*, 654 F.3d at 943.  However, as noted by

courts, in this Circuit, a "most common fund cases, the award exceeds that [25%] benchmark."

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009);

*see also Activision,* 723 F. Supp. at 1377–78 ("[N]early all common fund awards range around

30%.").  This common fund case should be treated similarly.

      **D.**      **Relevant Ninth Circuit Factors Support The Requested Award Of Attorneys' Fees**

      Relevant factors in assessing whether the requested fee percentage is appropriate include:

(1) the results for the class; (2) the risks for its counsel, (3) whether the fee is within the range

typically associated with cases of a similar kind; (4) the burden on plaintiffs' counsel of

prosecuting the case, and (5) the difficulty of the questions presented. *See Vizcaino*, 290 F.3d at

1048-50.  Here, the requested fee percentage is reasonable in light of these factors and a lodestar

cross-check.

      Lead Counsel aggressively prosecuted this Action with no guarantee of receiving any

remuneration.  Throughout this litigation, Lead Counsel has been aware of numerous risks,

including the general difficulty of satisfying the PSLRA's heightened pleading standards for

securities fraud claims, which required Plaintiffs to plead a strong inference that the Settling

Defendants acted knowingly or recklessly in issuing statements that were materially false or

misleading; the difficulty of surviving class certification; and the difficulty of proving key

elements of the case at summary judgment, at trial, and/or on appeal including scienter, loss

causation, and damages.  The Court's Dismissal Order, while affording Plaintiffs the opportunity

to further amend their pleadings, highlighted the degree to which it is difficult to satisfy these

standards, particularly given the PSLRA's mandatory discovery stay.

      In the face of all of these challenges, Counsel expended nearly 800 hours in professional

services and incurred $38,349.20 in out-of-pocket expenses in their efforts to litigate against the

Settling Defendants and to secure and advance the Settlement, without any compensation or

reimbursement of their expenses.  *See* Tuccillo Decl. ¶¶28-32.  An attorney fee award of 28% is

particularly justified here given the recovery of $1,100,000.00, obtained despite the obstacles posed by the Dismissal Order.  Accordingly, the favorable result under the circumstances, combined with the substantial risks faced by Plaintiffs and Lead Counsel, and the other factors cited herein, support the requested attorneys' fee of 28% of the Settlement amount.

### 1.     Lead Counsel Achieved A Favorable Result For The Class

Courts have recognized that the result achieved is an important factor to be considered in making a fee award.  *See Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007).  Here, the Settlement Fund for the Settlement consists of $1,100,000.00 in cash, all funded by the corporate Defendant Hortonworks upon execution of the original Stipulation of Settlement.

Notably, recovery of potentially higher damages depended on a further amended complaint surviving the Settling Defendants' second motion to dismiss, Plaintiffs obtaining class certification status, and Plaintiffs successfully overcoming the Settling Defendants' motions for summary judgment.  Plaintiffs would then have had to prevail at trial, to survive any appeals, and then to collect from the Settling Defendants (two individuals and a technology company whose multiple capital raises were at issue in this Action).  By resolving this Action against the Settling Defendants now, Plaintiffs and Lead Counsel secured a certain and favorable recovery for the Settlement Class while avoiding these risks.  Under any measure, this result is reasonable and supports the requested fee award.  Indeed, fees representing a *higher* percentage than that requested here have been awarded by courts within the Ninth Circuit in comparably sized securities class action settlements.  *See, e.g.*, *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees above 25%."); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities fraud class action where settlement fund was $1.25 million); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fee award equal to 33% of $12 million settlement fund); *Bond v. Ferguson Enters.*, *Inc.,* No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *15 (E.D. Cal. June 30, 2011) (awarding fees of 30% of common fund of

$2.25 million); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (finding that higher percentages, including between 30%-50% of the fund, tend to be awarded when the funds are less than $10 million) (collecting cases).

## 2.     The Risks Of Litigation Were High

That Lead Counsel undertook this litigation with substantial risk that they might not obtain any recovery for Plaintiffs and the Settlement Class is a significant factor in the award of fees. *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301. As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining the attorneys' percentage fee award. *See Vizcaino*, 290 F.3d at 1048 (that the case is "fraught with risk and recovery is far from certain" is "a relevant circumstance" that courts must take into account); *see also Am. Apparel*, 2014 WL 10212865 at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Courts nationwide have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove. *See, e.g., In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("[S]ecurities actions are highly complex."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different.  As described in the accompanying motion seeking final approval of the Settlement (in §§I-II) and Tuccillo Declaration (at ¶¶5-21 and 26), Lead Counsel navigated the challenging terrain of the PSLRA by engaging in a thorough investigation of potential claims on behalf of Hortonworks's investors, detailed pleading of claims, and hard-fought litigation over Defendants' first motion to dismiss, before devoting the substantial time and resources needed to secure, paper, and seek approval of the Settlement.  Even assuming Plaintiffs could have successfully overcome a second motion to dismiss, Lead Counsel anticipated that a class certification motion would have been highly contested, with the Settling Defendants attacking the fraud-on-the-market presumption.  Plaintiffs would then have been required to overcome the Settling Defendants' motion(s) for summary judgment and to prove their claims at trial, and, thereafter, successfully overcome likely post-trial appeals.

In sum, the obstacles faced by Plaintiffs and Lead Counsel in seeking to recover against the Settling Defendants in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA, the Court's concerns outlined in the Dismissal Order, and the applicable proof requirements during the later stages of the case (and on appeal).

### 3.   The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel

A determination of a fair fee must include consideration of its contingent nature.  It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.  *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986)).  In fact, contingent fees that may far exceed the market value of the services, if rendered on a non-contingent basis, are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis, regardless of whether they win or lose.  *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis.").  Courts have consistently

recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 28% award.  Lead Counsel made a substantial outlay of both time and money in this case, resources that could have been devoted to the prosecution of other matters, pursuing the claims at issue, while facing the very real risk of recovering nothing.[6]  Lead Counsel has received no compensation since this Action was filed (roughly 18 months ago) and has incurred significant litigation expenses for the benefit of the Settlement Class.  Although reimbursement was not assured, Lead Counsel advanced $38,349.20 in expenses to date for the benefit of the Settlement Class.  *See* Tuccillo Decl. ¶30.  Any fee award or expense reimbursement to Lead Counsel has always been at risk and completely contingent both on the result achieved and on this Court's exercise of its discretion in making any award.  Thus, this factor militates in favor of the Court granting Lead Counsel's requested award of attorneys' fees and reimbursement of out-of-pocket expenses.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559, F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

---

[6]   Many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, a securities class action litigated in this court, the jury issued a verdict in favor of defendants after years of litigation. No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).  In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), the class won a $38 million jury verdict (exclusive of prejudgment interest) and a motion for judgment *n.o.v.* was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation.  *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

### 4.    The Skill Required And The Quality Of The Work

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same).  Here, the quality of Lead Counsel's work on this case is reflected in the recovery obtained, and the complex factual landscape under which it was obtained, including the Court's entry of its Dismissal Order.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd sub nom.,* 899 F.2d 21 (11th Cir. 1990).

"The experience of counsel is also a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432-33  (E.D. Pa. 2001)) (where "the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re Public Service Co. of New Mexico*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third of common fund).  Lead Counsel are experienced and skilled practitioners in the securities litigation field.  *See* Tuccillo Decl., ¶25 and Exhibit 3 (Pomerantz Firm Resume).  From the outset, both before and after the Court's Dismissal Order, Lead Counsel left no stone unturned in an effort to obtain factual support buttressing the claims that the Settling Defendants had made actionable misrepresentations and/or omissions, with the requisite scienter.  Lead Counsel, after mounting a vigorous opposition to Defendants' first motion to dismiss, simultaneously oversaw a renewed investigation that yielded additional confidential witness interviews while also deftly negotiating the Settlement before the one-month period for further amendment expired.   The skill demonstrated by Lead Counsel supports the requested fee.

"The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law."  *In re Am. Apparel S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548 at *71-72 (C.D. Cal. July 28, 2014). Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and

1    damages, only skilled counsel who applied themselves diligently could have obtained such a

2    favorable recovery.   Following the Dismissal Order, Lead Counsel continued to protect the

3    claims against Hortonworks and as a result, entered into an oral agreement in principle to settle

4    on December 29, 2016 and the Memorandum of Understanding was executed soon thereafter, on

5    January 5, 2017.   It is important to reward skilled counsel for pursuing difficult cases because

6    "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue

7    to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy*

8    *Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

9            The quality and vigor of opposing counsel is relevant in evaluating the quality of the

10   services rendered by Lead Counsel.  *See, e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,

11   2016 U.S. Dist. LEXIS 17196 at *59 (N.D. Cal. Feb. 11, 2016); *Am. Apparel*, 2014 U.S. Dist.

12   LEXIS 184548 at *72-73; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337

13   (C.D. Cal. 1977); *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735,

14   749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality

15   of plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d. Cir. 1986).  Here, counsel for the Settling

16   Defendants are prominent and highly-skilled attorneys from Morrison and Foerster LLP with

17   substantial experience in defending securities class actions, who vigorously defended this Action

18   and provided top-tier legal services to their clients.

19                    **5.    A Lodestar Cross-Check Shows The Fee Request Is Reasonable**

20           As a "cross-check" on the reasonableness of a requested fee award, courts often compare

21   counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the

22   professionals providing the services) with the fee request made under the percentage-of-the-fund

23   method.  *See, e.g. Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.*,

24   307 F.3d 997, 1007 (9th Cir. 2002).  "[T]he lodestar calculation can be helpful in suggesting a

25   higher percentage when litigation has been protracted . . . [and] may provide a useful perspective

26   on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

27

28

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder settlements and the multipliers for each in which the average multiplier is 3.28); *id.* at 1051 (citing *WPPSS* for the proposition that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Indeed, the Ninth Circuit has recognized that the "*[risk multiplier] incentive is especially important in securities cases*." *Stanger*, 812 F.3d at 741 (emphasis added).

Here, the requested 28% fee actually amounts to a **<u>negative</u>** multiplier on Lead Counsel's lodestar incurred in litigating the case against the Settling Defendants and in securing and advancing the Settlement. Therefore, the lodestar cross-check confirms that the fee requested by Counsel, which represents a multiplier of approximately 0.62 is fair and reasonable. Additionally, Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution, nor does it include the time spent preparing this motion seeking payment of attorneys' fees and reimbursement of expenses. Indeed, the 0.62 multiplier in this case is unquestionably reasonable when compared to frequently awarded multipliers in cases from this Circuit. *Vizcaino*, 290 F.3d at 1051, n.6; *see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4.") (collecting cases).

### 6.   The Settlement Class's Reaction To The Fee Request Was Overwhelmingly Positive

Despite the over **8,285** short-form Notices mailed to Settlement Class Members, which directed them to the Claims Administrator's website, where they could obtain all the Settlement

papers, including the Stipulation and the long-form Notice advising that Lead Counsel would request a fee award up to 28%, along with the several other methods the Claims Administrator employed to give notice to Settlement Class Members (Evans Decl. ¶¶4-9), to date, **no objection** to the requested 28% fee or the reimbursement expenses (up to $50,000.00, as stated in the notice) has been filed. Evan Decl. ¶11. This lack of objections is noteworthy considering that over 20% of the Notice recipients (over 1,700 total) have filed claims. *Id.* ¶12. Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *Heritage*, 2005 WL 1594389, at *15-16 (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition").[7]

### E.   Lead Counsel's Expenses are Reasonable and Were Necessary to Achieve the Benefit Obtained

Lead Counsel incurred out-of-pocket expenses of $38,349.20 in prosecuting this Action. *See* Tuccillo Decl. ¶30. Such expenses consist primarily of necessary investigation expenses, research costs, necessary travel expenses, expert fees, court costs, and expenses associated with necessary court filings. *See* Tuccillo Decl., Exhibit 2.[8]

---

[7]   Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly examine counsel's fee motion," the deadline for filing any objections is September 1, 2017.

[8]   The line item for "Contract Counsel" lists the costs for Lead Plaintiffs' personal attorney, who assisted Lead Plaintiff during the course of the Action, including as regards the review and digestion of legal documents and the consideration of strategy issues such as those implicated by the choice between settlement or continued litigation. This assistance was vital, given, among other things, Lead Plaintiffs' medical issues, which have required multiple surgical procedures on his back, with associated recovery periods. Lead Counsel paid these legal fees out-of-pocket during the course of the Action and are merely requesting reimbursement now. The work done by this lawyer was not included in Lead Counsel's reported lodestar as conveyed on Exhibit 2.

1    Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in

2    addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991

3    WL 427887, at *2 (N.D. Cal. June 14, 1991).  It is well established that counsel who create a

4    common fund are entitled to the reimbursement of expenses that they advanced for the benefit of

5    the class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of

6    the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a

7    fee paying client.'") (citation omitted); *see also Immune Response,* 497 F. Supp. 2d at 1177;

8    *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding

9    that expenses are reimbursable if they would normally be billed to a client); *Abrams v. Lightolier

10   Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp.

11   235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket

12   expenses incurred and customarily charged to their clients, as long as they 'were incidental and

13   necessary to the representation of those clients") (citation omitted).

14   Courts within this Circuit, including this Court, have granted requests for reimbursement

15   of expenses such as the one here.  Counsel's expenses, which included "filing fees, … postage,

16   … computer research, … and travel" fall squarely within "the types of expenses routinely

17   charged to paying clients." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088

18   BTM KSC, 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech.

19   Sec. Lit.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)).  *Milligan v. Toyota Motor Sales, U.S.A.,

20   Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant

21   requests where "class counsel incurred out-of-pocket costs including, among other things: filing

22   fees; copying, mailing, faxing and serving documents; conducting computer research; travel to

23   hearings and mediation sessions; and expert fees); *see also In re Magsafe Apple Power Adapter

24   Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving

25   request of $100,000 in expenses that included "cost of experts and consultants, computerized

26   research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging

27   and transportation, and costs such as photocopies, postage, filing fees, and telephone charges.");

28

1  *accord Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188 at *10 (E.D.

2  Cal. Jan. May 17, 2011).

3      Because the expenses were incurred with no guarantee of recovery, Counsel had a strong

4  incentive to keep them as low as reasonably possible – and did.  Indeed, total expenses of

5  $38,349.20 are roughly 3/4 of the $50,000.00 estimate contained in the Notice, which generated

6  ***no objections*** from the Settlement Class.  Each of the expenses for which Counsel seeks

7  reimbursement was necessary to the successful prosecution of this case and is the type of expense

8  that would have been billed to a paying client.  Accordingly, reimbursement of the requested

9  expenses is reasonable and appropriate.

**F.      The Requested Awards to Plaintiffs Should Be Approved**

11      The Plaintiffs also request that the Court award them $750.00 each in connection with

12  their representation of the Settlement Class.  The PSLRA allows for reimbursements to

13  representative plaintiffs in securities class actions for "reasonable costs and expenses (including

14  lost wages) directly relating to the representation of the class." 15 USCS § 78u-4.  "[N]amed

15  plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for

16  reasonable incentive payments." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D.

17  Cal. 2015) (J. Davila) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 2003)

18  (approving awards of $5,000 each to two class representatives of 5,400 potential class members

19  in a settlement of $ 1.725 million); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th

20  Cir. 2009).  Plaintiffs dedicated their personal time and effort to prosecuting the Action.  They

21  were sent copies of complaints and motion papers for their review and comment, and they

22  regularly communicated with Lead Counsel and were apprised of developments in the case so

23  that they could fulfill their role in overseeing the litigation.  They communicated with Lead

24  Counsel in advance of and during the settlement negotiations.  Plaintiffs' efforts have played an

25  instrumental part in securing the Settlement, and as such, Plaintiffs' request for modest

26  compensatory awards are reasonable. *See* Tuccillo Decl. ¶33.

1    Plaintiffs have each submitted a declaration setting forth their participation in the Action,

2    including time and effort devoted to, among other things: (1) reviewing complaints and motion

3    papers; (2) providing trading records and PSLRA certifications; (3) overseeing the litigation; (3)

4    communicating with counsel about the Action; and (4) considering and approving the Settlement.

5    *See* Arvidson Decl. ¶¶4-5 Monachelli Decl. ¶¶4-5.  Absent the participation of Plaintiffs, the

6    Settlement would not have been achieved.  *See* Tuccillo Decl. ¶33.

7    The requested compensatory award of $750.00 each is fair and reasonable.  Courts in this

8    district, including this court, routinely approve awards of $5,000.00 (six times greater) to those

9    who represent a class.  *See, e.g.  Linkedin*, 309 F.R.D. at 592 (noting that "in this district, a

10   $5,000.00 incentive award is presumptively reasonable"); *Buccellato v. AT & T Operations, Inc.*,

11   No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (class representative

12   service payments of $20,000 to lead plaintiff and $5,000.00 each to 4 class representatives).

13   Recently, the Ninth Circuit stated that when deciding whether an incentive award is reasonable

14   and fair, it takes into consideration the number of class representatives, the average incentive

15   award amount, and the proportion of the total settlement that is spent on incentive awards.  *See*

16   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (rejecting

17   arguments that incentive awards were unreasonably large where 9 class representatives each

18   received awards of $5,000 (or $45,000 in total), which made up only .17% of the total settlement

19   fund of $27,250,000).  The $1,500.00 aggregate compensatory award sought here is just 0.13%

20   of the gross Settlement Fund and is not only lower than the $5,000.00 *per capita* routinely

21   awarded in the Ninth Circuit, but is also substantially lower than what is routinely approved

22   elsewhere.  *See, e.g. In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig*., No.

23   09-cv-7670, MDL 2103, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. 2011) (awarding $25,000.00

24   in the aggregate for one class representatives); *In re Veritas Software Corp. Sec. Litig.*, 396 F.

25   App'x 815, 817 (3d Cir. 2010) ($15,000.00 for each lead plaintiff); *In re Xcel Energy, Inc., Sec.,*

26   *Derivative & ''ERISA'' Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a

27   $100,000.00 award to lead plaintiffs, and noting that such awards are important because they

28

1  further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities

2  laws on behalf of persons other than themselves"); *In re Giant Interactive Grp., Inc. Sec. Litig.*,

3  279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000.00 as incentive and for lost time).

4  **II.    CONCLUSION**

5          Lead Counsel, under the supervision of Plaintiffs, achieved a favorable recovery,

6  especially given the Dismissal Order. Lead Counsel undertook substantial risk that no recovery

7  would ever be had, and generated a sizeable but necessary lodestar in prosecuting this Action to

8  this point on behalf of the Settlement Class.    Accordingly, Plaintiffs and Lead Counsel

9  respectfully request that this Court award the requested attorneys' fees in the amount of 28% of

10 the gross Settlement Fund, which would be $308,000.00.  Additionally, because the $38,349.20

11 in expenses that Lead Counsel advanced for the benefit of the Settlement Class were reasonably

12 necessary to the prosecution of this Action, and were the type usually billed to clients outside of

13 a contingency payment arrangement, Plaintiffs and Lead Counsel also request that the Court

14 grant their reimbursement in full.  Finally, Plaintiffs and Lead Counsel request that the Plaintiffs

15 be awarded $750.00 each for their efforts expended in this Action, without which the Settlement

16 would not have been achieved.  To effectuate this relief, Plaintiffs and Lead Counsel respectfully

17 request that the Court enter the Proposed Order appended as Exhibit 5 to the Tuccillo Declaration,

18 which is the same as the Proposed Order Regarding Plan of Allocation, Award of Attorneys'

19 Fees and Expenses, And Plaintiff Compensatory Awards, which was previously submitted to the

20 Court as Exhibit F to the revised Stipulation on May 26, 2017 (Dkt. No. 65-7).

Dated: August 24, 2017                          Respectfully submitted,

                                                */s/Matthew L. Tuccillo*
                                                Matthew L. Tuccillo
                                                Jennifer Pafiti (SBN 282790)
                                                **POMERANTZ LLP**
                                                468 North Camden Drive
                                                Beverly Hills, CA 90210
                                                Telephone: (818) 532-6449
                                                E-mail: jpafiti@pomlaw.com

                                                Jeremy A. Lieberman
                                                Matthew L. Tuccillo
                                                **POMERANTZ LLP**
                                                600 Third Avenue, 20th Floor
                                                New York, New York 10016
                                                Telephone: (212) 661-1100
                                                Facsimile: (212) 661-8665
                                                Email: jalieberman@pomlaw.com
                                                mltuccillo@pomlaw.com

                                                Patrick V. Dahlstrom
                                                **POMERANTZ LLP**
                                                10 South La Salle Street, Suite 3505
                                                Chicago, Illinois 60603
                                                Telephone: (312) 377-1181
                                                Facsimile: (312) 377-1184
                                                Email: pdahlstrom@pomlaw.com

                                                *Counsel for Plaintiffs and*
                                                *Lead Counsel for the Settlement Class*

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:16-cv-00980-SI

1

## **CERTIFICATE OF SERVICE**

2
       I hereby certify that this document filed through the CM/ECF system will be sent

3
electronically to the registered participants as identified on the Notice of Electronic Filing and

4
paper copies will be sent to those indicated as non-registered participants on August 24, 2017.

5

6
                                          */s/ Matthew L. Tuccillo*
                                          Matthew L. Tuccillo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMMBURSEMENT OF EXPENSES AND COMPENSATORY AWARDS FOR PLAINTIFFS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:16-cv-00980-SI